UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

JOHN T. BUDROW,                                    Civil Action No.:
*on behalf of himself and others similarly situated*,
                                Plaintiff,          29 U.S.C. §216(b)
                                                    COLLECTIVE ACTION & FED.
                                                    R. CIV. P. 23 CLASS ACTION

                -against-                           **VERIFIED COMPLAINT**

                                                    **DEMAND FOR JURY TRIAL**

McCAREY LANDSCAPING, INC.,
DONNA McCAREY, TIMOTHY
McCAREY, and JOHN DOES as the top 10
Shareholders of McCAREY LANDSCAPING, INC.,

                                Defendants.
---------------------------------------------------------------X

     Plaintiff John T. Budrow, on behalf of himself and others similarly situated, by and through

his attorney, Jennifer S. Echevarria, Esq., hereby complains of the Defendants as follows:

<u>**THE PARTIES**</u>

     1.     At all relevant times herein, Plaintiff John T. Budrow ("Plaintiff" or "Plaintiff John

Budrow" or "Plaintiff Budrow") maintained a residence in the Town of Pine Bush, County of

Orange, State of New York.

     2.     At all relevant times herein, Defendant McCarey Landscaping, Inc. (hereinafter

"McCarey Landscaping"), was and is a domestic business corporation organized under the laws of

the State of New York with a principal place of business at 80 Tower Drive, Middletown, County

of Orange, State of New York.

     3.     McCarey Landscaping is a business engaged in interstate commerce that has gross

sales in excess of five hundred thousand dollars ($500,000.00) per year.

4.      At all times relevant herein, McCarey Landscaping purchased and handled goods moved in interstate or foreign commerce, including construction and landscaping materials.

5.      At all relevant times herein, upon information and belief, Defendant Donna McCarey was the President and Chief Executive Officer of McCarey Landscaping.

6.      At all relevant times herein, upon information and belief, Defendant Timothy McCarey was the Vice President of McCarey Landscaping.

7.      At all relevant times herein, upon information and belief, Defendants Donna and Timothy McCarey were two of the top ten largest shareholders of McCarey Landscaping.

8.      At all relevant times herein, Defendants John Does, whose identities are presently unknown, were the other top 10 largest shareholders of McCarey Landscaping.

9.      Defendants McCarey Landscaping, Donna and Timothy McCarey, and the John Does identified in Paragraph "8" (jointly the "Defendants"), were Plaintiff's employers as that term is defined by the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYSLL").

10.     Starting in approximately March 2020 until December 3, 2021, Defendants employed Plaintiff as an operating engineer operating a dump truck and heavy machinery as needed, on both private and public, prevailing wage jobs.

11.     At all relevant times herein, Defendants hired, fired, supervised, controlled, paid, and maintained employee records for Plaintiff.

12.     As described below, Defendants acted intentionally and maliciously to deprive Plaintiff and other employees similarly situated of their wages and ultimately terminated Plaintiff Budrow in retaliation for complaining of same.

## JURISDICTION AND VENUE

13.    Jurisdiction is appropriate under 28 U.S.C. §1331 as this action pertains to violations of Federal Law, to wit, the FLSA at 29 USC 201, *et seq.*, as well as violations of the NYSLL, which can be heard by this Court pursuant to 28 U.S.C. §1367(a).

14.    Venue is based on Defendants' the place of business, the place where the acts and occurrences complained of herein occurred, and Plaintiff's residence, and is appropriate in this District pursuant to 28 U.S.C. §§ 112(b) and 1391(b) and (c).

## STATEMENT OF FACTS

### *Introduction*

15.    Defendants committed the acts described below knowingly, intentionally, willfully, and maliciously against Plaintiff and other, similarly situated employees.

16.    At all times relevant herein, Defendants knowingly, willfully and maliciously failed to pay Plaintiff Budrow and similarly situated employees for their travel time, working lunch breaks, proper prevailing wage rate for public work, and proper wage rate for weekend work per the applicable Collective Bargaining Agreement, as further described below.

17.    Had travel time and worked lunch breaks been recognized and accounted for by the Defendants, Plaintiff and other employees similarly situated would have at times been entitled to overtime pay and additional monies being paid into their pensions, annuities, and savings plan as per the applicable Collective Bargaining Agreement with their union, as described in more detail below.

18.    At all relevant times herein, Plaintiff and other similarly situated employees were not exempt under Federal and/or State laws and were required to be paid time and a half for all overtime worked in each one-week work period.

19.     Defendants intentionally failed to keep full and accurate records of Plaintiff's and other similarly situated employees' hours worked; for example, when Plaintiff put travel and working lunch on his timecards he was told by Defendant Timothy McCarey to stop doing so.

20.     As a result of Defendants' refusal to consider travel time and worked lunch periods as time worked that needed to be compensated, Defendants failed to provide Plaintiff and other similarly situated employees with accurate wage statements as required by NYSLL Section 195(3) as their pay stubs did not accurately reflect hours worked, correct hourly rates, nor an accurate reflection of wages and benefits earned.

### Facts

21.     Plaintiff Budrow began to work for Defendants in or around March 2020, when he was hired by Brian Smith, a manager for Defendants.

22.     At the time of hiring, Budrow was a member of Local Union 825 and was hired by Defendants as an operating engineer operating primarily a dump truck but also other equipment and machinery as needed.

23.     Defendants would send Plaintiff Budrow to both private and public work sites to perform his work.

24.     At all times relevant herein, Plaintiff and similarly situated employees were beneficiaries to Collective Bargaining Agreements between Local Union 825 and Defendants that required Defendants to pay, in addition to an hourly rate, $4.00 an hour towards an employee's pension fund, $2.82 per hour for his annuity fund, and $3.00 per hour for his savings plan fund.

25.     Said Collective Bargaining Agreements also required that, should Budrow and other similarly situated employees work on a Saturday, that he be paid time and a half whether or not he worked over 40 hours in that particular week.

26.     Plaintiff Budrow was paid a "mechanics rate," also known as a "shop rate," for all work done at Defendant's shop or at private, non-public work sites.

27.     Plaintiff Budrow's mechanics rate of pay was $29.75 per hour from January 1, 2020, until August 8, 2021.

28.     Plaintiff Budrow's mechanics rate of pay after August 8, 2021, was $31.75 per hour.

29.     Plaintiff Budrow's rate of pay on public work sites as a Class E operator of an Off-Road Back Dump truck was $49.18 per hour.

30.     At all times relevant herein, Plaintiff Budrow would start his workday by going to Defendant's shop, clocking in, and preparing and inspecting Defendant's work truck for the day.

31.     Thereafter, Plaintiff Budrow would drive Defendant's truck to get fuel if necessary and then to the first job site.

32.     At all relevant times herein, Plaintiff Budrow was never compensated for the time between when he clocked in at Defendants' shop until the time he arrived at the first job site (all of which took approximately one hour) even though Plaintiff put this time on his time cards.

33.     At all relevant times herein, at the end of the workday, Plaintiff would leave the job site and either go put fuel in the truck or drive directly to the shop where he would do a post-trip inspection of the vehicle driven that day, and then clock out (all of which would take approximately one hour from the time he left the job site to the time he clocked out).

34.     At all relevant times herein, Plaintiff Budrow was never compensated for the time between when he left the job site until the time he clocked out at Defendants' shop.

35.     The one hour at the beginning of the day and the one hour at the end of the day that were not compensated are hereinafter called "Travel Time"; Travel Time totaled about two hours per day.

36.     Upon information and belief, other similarly situated employees were also not compensated for their Travel Time.

37.     When Plaintiff Budrow complained to Defendant Timothy McCarey about not being paid for Travel Time, Defendant Timothy McCarey told Budrow that he was already paid generously per hour for his time at the job site so he shouldn't complain about the Travel Time; he also verbally threatened Budrow that, if he contacted the Union about this, he would be fired.

38.     At all relevant times herein, Plaintiff Budrow was required to work through his half hour lunch breaks and was required to eat while he drove to other sites and/or operated the machinery he was responsible for.

39.     When Plaintiff Budrow began putting worked lunch breaks on his time cards, Defendant Timothy McCarey angrily reprimanded Budrow for doing so and told him to stop.

40.     Upon information and belief, other similarly situated employees also worked through their lunch breaks and were not compensated therefore.

41.     Starting on August 4, 2021, while on a public work job that was known as the "Callahan Job" on Route 84 in Orange County, New York (the "Callahan Job"), Plaintiff Budrow was supposed to be paid the prevailing wage rate of $49.18 per hour but the rate that he was actually paid by Defendants was $33.02 per hour, which amount was shown on his pay stubs.

42.     In addition, while on the Callahan Job, Plaintiff Budrow worked two overnight shifts from Friday to Saturday (August 6-7 and August 13-14, 2021) wherein he was not paid time

and a half for the hours worked on those Saturdays, as required by the Collective Bargaining Agreement dated May 1, 2021.

43.    Upon information and belief, other similarly situated employees were also paid a lower rate than the required prevailing wage rate at the Callahan Job, and were also not paid time and a half for work performed on Saturdays.

44.    On April 30th, October 29th, November 2nd, and November 22nd, 2021, Plaintiff Budrow documented his communications with Defendant Timothy McCarey wherein he complained about not being paid proper wage rates and for not being paid for Travel and working lunch times.

45.    Defendant Timothy McCarey responded angrily to Plaintiff Budrow's complaints and essentially told Budrow that he should be happy with what he was earning.

46.    Defendant Timothy McCarey also responded by starting to publicly ridicule and verbally abuse Budrow in front of his co-workers, calling him "Pillsbury Doughboy" and other derogatory comments regarding his weight.

47.    On December 3, 2021, just eleven days after Plaintiff Budrow's most recent complaint about not being paid proper wages or for all time worked, Plaintiff was illegally terminated by Defendant Timothy McCarey for allegedly cutting off another driver while driving the company's truck.

48.    Defendant Timothy McCarey not only illegally terminated Plaintiff Budrow in retaliation for his complaints about wage theft, he also terminated Plaintiff in a way that breached the May 1, 2021, Collective Bargaining Agreement given that the proper procedural steps for termination, including arbitration, were not undertaken.

49.     Upon termination, Plaintiff Budrow had accumulated six days of paid vacation time that he had not used that year, and that should have been paid out to him at the time he was terminated at the mechanics rate of $31.75; Budrow never received such payment.

50.     This action is timely as it has been initiated within the statute of limitations provided by FLSA and NYSLL, to wit, within 2 years and 6 years, respectively, of the date the wages were earned.

### Collective Action Allegations

51.     Plaintiff John Budrow brings his claims individually and on behalf of all other current and former non-exempt workers employed by Defendants over the three years preceding the filing of this Complaint, through the entry of judgment in this case (the "Collective").

### Class Allegations

52.     Plaintiff John Budrow also brings his claims as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt workers employed by Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").

53.     The Class members are readily ascertainable.  The Class members' names, phone numbers, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records.  Notice can be provided by means permissible under Rule 23.

#### Numerosity

54.     The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

55.     Although the precise number of such persons is unknown, and the facts on which the calculation of the precise numbers are presently within the sole control of Defendants, upon information and belief, there are more than 40 members of the Class.

*Commonality*

56.     There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: 1) whether Defendants employed the Collective and/or the Class members within the meaning of Federal and NY law; 2) whether the Class members were paid for time travelling to and from Defendants' shop and the work sites; 3) whether the Class members were paid for time worked during lunch breaks; 4) whether the Class members were incorrectly paid wages lower than the prevailing wage for public work; 5) whether the Class members were given proper and accurate wage statements as required by Labor Law Section 195(3); and 6) whether the Class members were paid time and a half for time worked on Saturdays as required by their Collective Bargaining Agreement.

*Typicality*

57.     Plaintiff John Budrow's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

58.     All the Class members were subject to the same policy and practice of denying wages for time spent travelling to and from the shop to the work site, denying wages for work performed through what were supposed to be lunch breaks, being paid the incorrect rates on public work sites, not being paid time and a half for work performed on Saturdays under the applicable Collective Bargaining Agreement, and not being provided accurate wage statements.

59.    Defendants' policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

60.    Plaintiff Budrow and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies and practices.

*Adequacy*

61.    Plaintiff Budrow is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

62.    Plaintiff Budrow is represented by attorneys who are experienced and competent in representing plaintiffs in wage and hour employment litigations.

*Superiority*

63.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant.

64.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

65.    Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

66.    Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court

and public resources; treating the claims as a class action would result in a significant saving of these costs.

67.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests though actions to which they were not parties.

68.    The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

69.    Upon information and belief, Defendants and other employers throughout the State violate the NYSLL and current employees are often afraid to assert their rights out of fear of direct or indirect retaliation; former employees are fearful of bringing claims because doing so can harm their future employment and efforts to secure employment.  Class actions provide class members who are not named in the Complaint with a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## **STATEMENT OF CLAIMS**

**FIRST CLAIM ON BEHALF OF PLAINTIFF, THE COLLECTIVE AND THE CLASS FOR FAILURE TO PAY ANY WAGES FOR TRAVEL AND LUNCH TIMES UNDER FAIR LABOR STANDARDS ACT SECTIONS 6(a) AND 15(a)(2)**

70.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "69" as though fully set forth at length herein.

71.     Plaintiff was on the clock and working for Defendants the moment he arrived at Defendants' shop in the mornings and clocked in, up to the time that he returned to the shop at the end of the day and clocked out.

72.     Plaintiff and others similarly situated were not paid for Travel Time as previously defined.

73.     Plaintiff and others similarly situated were not paid for when they worked through their half hour lunch breaks even though Defendants were aware that they were working through lunch and not able to take breaks.

74.     By failing to pay Plaintiff, the Collective and the Class any wages for the time they travelled between the shop and the job sites, and when they worked through lunch, Defendants willfully violated FLSA Sections 6(a) and 15(a)(2).

75.     Plaintiff, the Collective and the Class are entitled to wages at their regular rate(s) of pay for every hour that they worked without compensation travelling between the shop and job sites, and working through lunch.

76.     Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

77.     Therefore, Plaintiff, on behalf of himself, the Collective and the Class, demands payment of unpaid regular wages and an equal amount in liquidated damages under FLSA Section 16(b), prejudgment interest on said unpaid minimum wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**SECOND CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY ANY WAGES FOR TRAVEL AND LUNCH TIMES UNDER NEW YORK STATE LABOR LAW SECTIONS 652, 663(1) AND 198(1-a)**

78.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "77" as though fully set forth at length herein.

79.     Plaintiff was on the clock and working for Defendants the moment he arrived at Defendants' shop in the mornings and clocked in, up to the time that he returned to the shop at the end of the day and clocked out.

80.     Plaintiff and others similarly situated were not paid for Travel Time as previously defined.

81.     Plaintiff and others similarly situated were not paid for when they worked through their half hour lunch breaks even though Defendants were aware that they were working through lunch and not able to take breaks.

82.     By failing to pay Plaintiff and the Class, any wages for the time they worked travelling between the shop and job sites and during lunch times, Defendants willfully violated NYSLL Section 652.

83.     Plaintiff Budrow, the Collective and the Class, are entitled to wages at their regular rates for every hour that they worked without compensation travelling between the shop and their work sites, and when they worked through lunch.

84.     Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

85.     Therefore, Plaintiff, on behalf of himself, the Collective and the Class, demands payment of unpaid wages and an equal amount in liquidated damages under NYSLL Sections

198(1-a) and 663(1), prejudgment interest on said unpaid regular wages, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

### THIRD CLAIM ON BEHALF OF PLAINTIFF, THE COLLECTIVE AND THE CLASS FOR FAILURE TO PAY OVERTIME WAGES FOR TRAVEL AND LUNCH TIMES UNDER FAIR LABOR STANDARDS ACT

86.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "85" as though fully set forth at length herein.

87.     Given that the time that Plaintiff, the Collective and the Class worked without pay (travel and lunch times) were not counted in their total hours worked every week, the extra hours added to each week could have resulted in the requirement for Defendants to pay them overtime wages, i.e., wages at time and a half, given that the travel and lunch times may have put the employees over the forty-hour per week threshold for the legal requirement for such payments.

88.     Defendants violated Sections 7(a) and 15(a)(2) of the FLSA by employing Plaintiff, the Collective and the Class, in an enterprise engaged in commerce for workweeks longer than those prescribed in FLSA Section 7 without compensating them for their employment in excess of forty (40) hours per week at a rate of not less than one- and one-half times the regular rate at which they were employed.

89.     Plaintiff Budrow has not previously initiated a complaint for the relief claimed herein before any other court.

90.     Therefore, Plaintiff demands, on behalf of himself, the Collective and the Class, payment of unpaid overtime compensation and an equal amount in liquidated damages under FLSA Section 16(b), prejudgment interest on said unpaid overtime compensation, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**FOURTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY OVERTIME WAGES FOR TRAVEL AND LUNCH TIMES UNDER NEW YORK STATE LABOR LAW**

91.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "90" as though fully set forth at length herein.

92.     Given that the time that Plaintiff and the Class worked without pay (travel and lunch times) were not counted towards their total hours worked each week, the extra hours added to each week could have resulted in the requirement for Defendants to pay them overtime wages, i.e., wage rate at time and a half, given that the travel and lunch times may have put the employees over the forty-hour per week threshold for the legal requirement for such payments.

93.     Defendants willfully violated the New York State ("NYS") Minimum Wage Orders of the Commissioner of Labor of the NYS Department of Labor, at 12 NYCRR 142-2, by refusing to compensate Plaintiff and the Class a wage rate of one and one-half times their regular rates of pay for each hour that they worked over forty (40) hours in any given week.

94.     Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

95.     Therefore, Plaintiff, on behalf of himself and the Class, demands payment of unpaid overtime compensation and an equal amount in liquidated damages under NYLL Sections 198(1-a) and 663(1), prejudgment interest on said unpaid overtime compensation, attorney's fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**FIFTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY AGREED-UPON BENEFITS ASSOCIATED WITH UNPAID TRAVEL AND LUNCH TIME WAGES**

96.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "95" as though fully set forth at length herein.

97.    Section 198-c(1) of the NYLL provides that an employer who is party to an agreement to pay or provide benefits or wage supplements to its employees and who fails to do so within thirty days after such payments are required to be made, shall be guilty of a misdemeanor and punished in accordance with NYLL 198-a.

98.    The Courts of the State of New York have interpreted this statute to impose a requirement upon the employer to abide by the terms of the agreement and provide the promised benefits.  *See, e.g., Glenville Gage v. Industrial Board of Appeals*, 70 A.D.2d 283, 286 (3rd Dept. 1979), *aff'd* 52 N.Y. 2d 777 (1980).

99.    Plaintiff and other employee members of Local Union 825 had a Collective Bargaining Agreement, the most recent dated May 1, 2021, governing the benefits they were to be paid by Defendants *in addition to* their hourly salaries, including hourly rates for pension, annuity and savings plan funds.

100.    Plaintiff and other employees similarly situated were beneficiaries to said Collective Bargaining Agreements and as such have standing to sue to enforce the provisions thereof.

101.    Pursuant to Collective Bargaining Agreements between Plaintiff's Local Union 825 and Defendants, Defendants agreed to pay Plaintiff and pertinent members of the Class, in addition to the employees' hourly rates, $4.00 an hour to a pension fund, $2.82 per hour to an annuity fund, and $3.00 per hour to a savings plan fund.

102.    Defendants failed to pay these extra benefits when they failed to pay Plaintiff and the Class for hours worked travelling from the shop to the job site and back, and when they worked through lunch.

103.    NYSLL Section 198 (1-a) provides that an employee that brings a wage claim against an employer and prevails shall be entitled to the full amount of the underpayment, all reasonable attorney's fees, prejudgment interest, and an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.

104.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

105.    Therefore, Plaintiff, on behalf of himself and the Class, demands payment of the benefits earned under the pertinent Collective Bargaining Agreements yet unpaid to the present date, liquidated damages equal to one hundred percent of the value of the benefits that are found due and owing, prejudgment interest, attorneys' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**SIXTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PAY THE CORRECT PREVAILING WAGE RATE UNDER NEW YORK STATE LABOR LAW SECTION 220-g**

106.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "105" above as though fully set forth at length herein.

107.    Section 220(3)(a) of the NYSLL requires that all employees working on a public works job as defined in the statute, must be paid a wage not less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where the public work is located.

108.    The previously mentioned "Callahan Job" on NYS Route 84 was a public works job as defined by NYSLL and Plaintiff and other employees of Defendants similarly situated were entitled to prevailing wages for work on that Job and all other public work sites at which they worked.

109.    Plaintiff Budrow was supposed to make $49.18 per hour on the Callahan Job and all other public work sites at which he worked, but his paystubs for the time period of August 4, 2021, through December 3, 2021, show that he was paid only $33.02 per hour for time worked on that Job and on all other public work jobs.

110.    Section 220-g of the NYSLL permits an employee to bring an action against the contractor or subcontractor, i.e., Defendants, for a portion of the bond that was required to be paid by State Finance Law, for unpaid wages due and owing to him.

111.    The statute of limitations on a claim under NYSLL 220-g is one year from the date of the last alleged underpayment, and therefore this claim is timely.

112.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

113.    Therefore, Plaintiff demands, on behalf of himself and the Class, unpaid wages and associated supplements and benefits including interest from the date earned, reasonable attorneys' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

**SEVENTH CLAIM BY PLAINTIFF FOR BREACH OF CONTRACT FOR FAILURE TO PAY ACCUMULATED PAID VACATION TIME UPON TERMINATION AND TIME AND A HALF FOR SATURDAY WORK AS PER THE APPLICABLE COLLECTIVE BARGAINING AGREEMENT**

114.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "113" above as though fully set forth at length herein.

115.    At all relevant times herein, Plaintiff Budrow was and is a member of Local Union 825.

116.    At all relevant times herein, Plaintiff's employment with Defendants was governed by Collective Bargaining Agreements between his union and Defendants; Plaintiff was a beneficiary of said Agreements and as such has standing to sue to enforce its provisions.

117.    The applicable Collective Bargaining Agreement, the most recent of which is dated May 1, 2021, states that paid vacation time will accumulate from May 1st through April 30th every year.

118.    Said Collective Bargaining Agreement also states that Plaintiff, as an employee that had completed within 1-5 years of service for Defendants, was entitled to two weeks paid vacation consisting of eighty hours at regular shop rate provided that he had worked at least 60 percent of the total working days available during the preceding year.

119.    Plaintiff had worked at least 60 percent of the total working days available during the year preceding May 1, 2021.

120.    As of Plaintiff's termination on December 3, 2021, he had earned and accumulated 6 days of paid vacation prorated from May 1, 2021, through the date of termination.

121.    As of the time of termination, Plaintiff had not taken or been provided any *paid* vacation time from May 1, 2021, through December 3, 2021.

122.    At the time of termination, Plaintiff was not paid for his 6 days of earned and accumulated paid vacation time plus associated pension, annuity and savings plan benefits that were also not paid, which was breach of said Collective Bargaining Agreement.

123.    In addition, the May 1, 2021, Collective Bargaining Agreement required that Defendants pay employees time and a half for work performed on Saturdays regardless of total hours worked during the particular pay week.

124.    Defendants failed to pay Plaintiff time and a half (at the prevailing wage rate) for work performed on the Callahan Job on August 7 and 14, 2021 (both Saturdays) resulting in unpaid wages, which also constitutes a breach of said Collective Bargaining Agreement.

125.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

126.    Therefore, Plaintiff demands payment of all wages and paid vacation time owed to him under the NYSLL and applicable Collective Bargaining Agreements, including interest from the date earned and/or of termination, reasonable attorneys' fees, costs and disbursements, and such other and further relief that this Court deems just and proper.

### EIGHTH CLAIM ON BEHALF OF PLAINTIFF AND THE CLASS FOR FAILURE TO PROVIDE PROPER WAGE STATEMENTS AS REQUIRED BY NEW YORK LABOR LAW SECTION 195(3)

127.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "126" above as though fully set forth at length herein.

128.    NYSLL Section 195(3) requires that employers furnish employees with a statement with every payment of wages listing, among other things, the number of regular and overtime hours worked that period; the regular, overtime and prevailing wage rates; and the wages being paid that week.

129.    From the time he started employment with Defendants in or around March 2020 through the time of termination on December 3, 2021, Plaintiff Budrow was not given proper wage statements under NYSLL Section 195(3) in that said statements did not acknowledge and record the accurate number of hours that Defendants knew Plaintiff had worked each period, said statements did not properly reflect the accurate prevailing wage rate, and said statements did not

record overtime hours or pay when travel and lunch times brought Plaintiff over the forty-hours-a-week threshold.

130.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

131.    Therefore, Plaintiff, on behalf of himself and the Class, demands payment of two hundred fifty dollars ($250.00) for each work day that the violations occurred up to five thousand dollars ($5,000.00) for each employee, together with costs and reasonable attorney's fees, as provided under LL Section 198(1-d), and such other and further relief that this Court deems just and proper.

## NINTH CLAIM BY PLAINTIFF BUDROW
## FOR RETALIATORY DISCHARGE UNDER NEW YORK LABOR LAW SECTION 215

132.    Plaintiff repeats and realleges each and every allegation stated or contained in Paragraphs "1" through "131" above as though fully set forth at length herein.

133.    Section 215(1)(a) of the NYSLL prohibits an employer from discharging or otherwise retaliating against an employee that has in good faith made a complaint to his employer that he reasonably believes the employer has violated provisions of the NYSLL; explicit reference to any section or provision in the NYSLL is not required.

134.    Section 215(2)(a) of the NYSLL provides that an aggrieved employee may bring a civil action against an employer that has so discharged and/or retaliated against him, within two years of the discharge and/or retaliation, and that said employee will be entitled to all appropriate relief including liquidated damages up to $20,000.00, payment of costs and reasonable attorney's fees associated with bringing the action, reinstatement with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages.

135.    In this case, Plaintiff Budrow complained to Defendant Timothy McCarey on several occasions, four of which are documented, wherein Budrow complained that he was being paid the incorrect hourly rate, that he was not being paid for travel and lunch times, and that benefits that were supposed to be added to his wages for pension, annuity and savings fund, were not shown on his paystubs and such payments if any were not being reported to him.

136.    Plaintiff Budrow had a reasonable and good faith belief that said actions by Defendants violated the NYSLL.

137.    Within eleven days of Budrow's most recent complaint about wages to Defendant Timothy McCarey, he was terminated for a pretextual reason (i.e., cutting someone off while driving the company truck) without following the termination procedure required by the governing Collective Bargaining Agreement.

138.    Defendants' termination of Budrow was in retaliation for his complaint and therefore violates NYSLL.

139.    Plaintiff has not previously initiated a complaint for the relief claimed herein before any other court.

140.    Therefore, Plaintiff demands payment of $20,000.00 in liquidated damages, payment of costs and reasonable attorney's fees associated with bringing this action, an award of front pay in lieu of reinstatement, an award of lost compensation and damages, and such other and further relief that this Court deems just and proper.

**JURY DEMAND**

141.    Plaintiff demands a trial by jury on all questions of fact.

**WHEREFORE**, Plaintiff, on behalf of himself and on behalf of the Collective and the Class, prays that this Honorable Court:

a. Accept jurisdiction over this matter;

b. Empanel a jury to fairly hear and decide this matter;

c. At the earliest practicable time give notice of this collective action, or authorizing Plaintiff to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt hourly workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe that they suffered wage theft at the hands of Defendants;

d. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e. An injunction against Defendants, its owners, officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

f. An award of regular and overtime wages, plus applicable benefits, for all of Plaintiff, the Collective and the Class's Travel Time and time they worked through lunch;

g. An award of unpaid wages representing the difference between the prevailing wage that Plaintiff, the Collective and the Class should have been paid, and the wages that they were actually paid;

h.  An award of the accumulated, paid vacation time that Plaintiff earned and should have been paid at the time of termination and unpaid Saturday wages, as per the applicable Collective Bargaining Agreement(s) and NYSLL;

i.  An award of $5,000.00 to each employee in the Class, including Plaintiff, for Defendants' failure to provide them with the proper wage statements required by NYSLL 195(3);

j.  An award to Plaintiff Budrow of the maximum damages available under NYLL Section 215 of $20,000.00 for his retaliatory discharge plus an award of front pay in lieu of reinstatement and an award of lost compensation and damages;

k.  An award of interest on the wages found to be owed, at the rate of nine percent per year from the date the wages were earned, pursuant to Section 5004 of the NY Civil Practice Law and Rules;

l.  An award of reasonable attorneys' fees;

m.  An award representing the costs and disbursements of this action; and

n.  Any other and further relief that this Court deems just and proper.


Dated: Warwick, New York
        January 31, 2022

JENNIFER ECHEVARRIA (JE5544)
Echevarria Law, PLLC
*Attorney for Plaintiff, proposed FLSA*
*Collective, and potential The Class*
P.O. Box 1053
Warwick, New York 10990
(T) 845-544-7644
(E) EchevarriaLaw@optimum.net

## VERIFICATION

STATE OF NEW YORK )
                            ) SS.:

COUNTY OF ORANGE )

        John T. Budrow, being duly sworn, says:

        I am the Plaintiff in the action herein.

        I have read the annexed Verified Complaint dated January 31, 2022, know the contents thereof and the same are true to my knowledge, except those matters therein which are alleged upon information and belief and as to those matters I believe them to be true.

                                         _____
                                         JOHN T. BUDROW

Sworn to before me this
31 day of January, 2022

_____
NOTARY PUBLIC

ADAM ODENDAHL
Notary Public - State of New York
NO. 01OD6324396
Qualified in Orange County
My Commission Expires May 4, 2023